**Ralph FINGER, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

July 18, 1974.

Certiorari Denied by Supreme Court Nov. 12, 1974.

Perry P. Paine, Jr., and Jerry G. Cunningham, Maryville, Edward Michael Ellis, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, H. Kenneth Deatherage, Dist. Atty. Gen., Kingston, John C. Crawford, III, Asst. Dist. Atty. Gen., Maryville, for defendant in error.

OPINION

RUSSELL, Judge.

The plaintiff-in-error, Ralph Finger, appeals his conviction for the possession of marijuana and ·punishment of confinement

in jail for eleven months and twenty-nine days in addition to a fine of one thousand dollars ($1,000.00).

■ At the outset we must observe that the bill of exceptions in this case was filed late. On October 8, 1973, ninety days was allowed for such filing. The trial judge apparently signed the bill of exceptions on February 4, 1974, and it was filed by the trial court clerk on February 11, 1974. Defense counsel is apparently retained, and has made no motion for a late filing as is now appropriate in a proper case under the 1970 amendment to T.C.A. § 27–111. Nor has the State mentioned this defect, although it is made even more apparent by a letter appended to the purported bill of exceptions written by the official court reporter to the trial court clerk and dated February 4, 1974, in which the reporter refers to the enclosed transcript and explains its lateness as resulting from a break-down of her transcriber, an extra heavy work load, and incapacitation from influenza. This letter contains the added endorsements of the trial judge and the district attorney general, who "certify the foregoing is true". In this context, we will authenticate the late filing of the bill of exceptions upon our own motion, good cause appearing and in the manifest interest of justice. Dailey v. State, 225 Tenn. 472, 470 S.W.2d 608 (1971).

The pivotal question in this case concerns the occupancy of the apartment in which the defendant and the marijuana were found. Defense counsel mounted an attack upon the search warrant in a pre-trial suppression hearing, taking the position that the warrant was factually defective when it addressed itself to Ralph Finger "who resides or occupies and is in possession of * * * apartment number thirteen at the Crestview Apartments * * *". The defense theory was that Finger had moved out of the apartment two weeks before the raid, invalidating the search warrant addressed to him.

The facts developed upon the suppression hearing and upon the trial well support the State's case. Apparently Finger did go to the lady who was in charge of apartment rentals at the multi-unit apartment house on April 12th and told her that he was moving out that day. However, he personally paid the rental for the whole month of April. She until then had the apartment listed to him and one Gene Thompson, who had long been gone. One Gary Cannaster had been living with Finger, and one Jim Burns was reported by Finger to the landlady as being the one who was taking his place. The landlady admitted on cross-examination that basically all that she knew about who lived there was who brought her the rent. Apparently there was no lease. She never met Burns.

Finger contended that he moved out on April 12th, returning to a room in his mother's home. He says that he took his clothes, TV, and stereo; but admits that he left some furniture that had belonged to him, claiming that he gave it to Cannaster. Two weeks passed before the raid on April 27th. During that time Finger admitted being back at the apartment "three, four or five" times; and officers who had the place under surveillance placed him there practically every day.

On the evening of the raid Finger, a 28 year old man, was present in the apartment with two young girls in their mid-teens. The hour was after 10 p. m. and he was alone with the girls. He admits being in the exclusive possession of the apartment, Burns having gone to Atlanta and Cannaster having let him have a key to the apartment to use the place for his "date" that night. In this context, the officers found a strong smell of marijuana smoke and all three of the occupants high; and found the quantity of marijuana that forms the basis for this prosecution secreted in the lining of a man's coat in a bedroom closet. They also found scales calibrated in grams, empty plastic baggies, cigarette papers, and a pipe upon the premises. While the

search was in progress four youths arrived at the apartment, apparently high and in possession of marijuana and were arrested. Some of the officers testified that Finger identified the bedroom where the contraband was found as his.

■ We hold that the trial judge correctly refused to suppress the evidence, there being ample evidence that Finger occupied the premises at the time of the raid.

■ The jury found Finger guilty, not upon any legal presumption arising from his being the legal owner of the premises (no such presumption having even been charged), but upon the totality of the direct and circumstantial evidence that pointed to him as being the possessor of this contraband on this occasion. He was admittedly in exclusive possession and control of the premises. While Cannaster was willing to admit that the contraband was found in Cannaster's bedroom closet and in his coat, he denied knowledge of the marijuana. Since there was strong evidence of use of the drug on this occasion, what was found there was circumstantially what was being used and possessed by Finger. The State's case is not built upon any presumption, but is grounded upon evidence. We hold that the evidence of possession is legally sufficient to support the conviction.

The remaining assignment of error complains that "the Court erred in not holding a full hearing to consider the validity of the search warrant". As we have stated previously, a pre-trial suppression hearing· was held. However, during the course of the trial, when the State sought to introduce the search warrant itself into evidence, defense counsel indicated an objection because the officer to whom the warrant was issued was not present. Apparently he was ill and nominally unable for that reason to attend. An instanter subpoena for him was demanded and authorized, and that is the last that the record shows of the matter.

■ We find no reversible error. To begin with, the search warrant itself was not a vital item of evidence. (Incidentally, although apparently filed as an exhibit, neither it nor any of the other exhibits are actually included in the bill of exceptions.) It is the fruits of the search that form the evidence, and the search warrant is relevant only upon the question of their admissibility, a question for the Court. Any error in letting a search warrant into evidence would normally be harmless, because a search warrant is not normally evidence to go before a jury.

■■ Here, if there was a valid question of defect in the search warrant, it was incumbent upon the defense to carry the burden of going forward with a timely attack upon the introduction of the evidence procured therewith. We cannot hold a trial court in error "for not holding a full hearing to consider the validity of the search warrant" when no such procedure was timely brought into play.

Affirmed.

OLIVER and DWYER, JJ., concur.